**Hannah INGRAM, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**No. GC 6545–K.**

United States District Court
N. D. Mississippi,
Greenville Division.

Jan. 30, 1969.

Joseph E. Wroten, Greenville, Miss., for plaintiff.

H. M. Ray, U. S. Atty., Oxford, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

Plaintiff filed this action under the provisions of 42 U.S.C. § 405(g), seeking judicial review of the administrative determination of the Secretary of Health, Education and Welfare denying her claim for establishment of a period of disability under 42 U.S.C. § 416(i), and for monthly disability insurance benefits under 42 U.S.C. § 423.[1]

Plaintiff alleged in applications filed on July 11, 1962,[2] and January 27, 1964, that she became unable to work on May 7, 1962, stating as her disabling impairment, "Heart trouble" and "heart trouble—leg trouble—nervous" in the respective applications. When the latter application had been denied at all administrative levels, she sought judicial review. Upon motion of both parties for summary judgment, this court (Clayton, C. J.) remanded the cause to the Secretary for the further taking of such evidence "as the plaintiff may be able to produce in respect to her disability, and for the taking of such counter evidence as defendant may have or produce," Ingram v. Gardner, No. GC 6545, N.D. Miss., September 30, 1966, stating its reasoning at page 2 of the Memorandum Opinion:

"From the transcripts and briefs in this case, it appears to the court that the hearing examiner's decision is technically supported by such substantial evidence as to require affirmance, but it also appears that plaintiff has not been represented by counsel prior to the proceedings in this court and that the record is so inadequate from her point of view that the ends of justice will be better served by remanding this case to the Secretary for further proceedings in which the plaintiff will be represented by counsel."

On November 30, 1966, the Appeals Council, remanded the case to the hearing examiner, with instructions to "provide adequate opportunity to the claimant to comment on any additional evidence, to submit material evidence, to raise pertinent objections, to examine and cross-examine witnesses, * * *" (TR 274).

Plaintiff retained counsel and, on August 28, 1967, appeared before the hearing examiner, represented by her attorney and with Jerome B. Hirsch, M. D., as her witness. After hearing testimony from plaintiff and her physician, and after considering additional documentary medical evidence, the examiner de-

1. Prior to the enactment of the 1965 Social Security Amendments, "disability" was defined in both §§ 416(i) and 423 as:

"* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration."

The 1965 Amendments (Pub.L. 89–97 § 303(a), 79 Stat. 286, and, later the Amendments of 1967 (Pub.L. 90–248 § 158(d), 81 Stat. 821 changed the definition of disability to:

"* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death *or which has lasted*

*or can be expected to last for a continuous period of not less than 12 months * * *.*" (Emphasis added).

Since judicial review of this action was pending on January 1, 1968, the new definition applies. Daniel v. Gardner, 390 F.2d 32 (5 Cir. 1968); Pub.L. 90–248 § 158(e), January 2, 1968.

2. The July 1962 application was denied initially, on reconsideration, and by decision of a hearing examiner, after an evidentiary hearing at which plaintiff appeared and gave testimony. The Appeals Council, on December 11, 1963, denied plaintiff's request for review of the hearing examiner's decision. The claimant did not further pursue this application, but instead filed a new application on January 27, 1964.

termined that plaintiff was not disabled within the meaning of the Social Security Act, at any time from October 1, 1962, to September 30, 1966, when she last had the necessary disability insured status.[3] The gist of his evaluation of the medical evidence is found at page 248 of the transcript record:

" * * * [I]t appears that the claimant has many subjective complaints which cannot be documented objectively and that the sum of the medical evidence is that the claimant has no medically determined impairment of significantly disabling proportions * * * [F]rom a medical standpoint, from a psychiatric standpoint, from an orthopedic standpoint, and from a neurological standpoint, the claimant has no medically determined impairments and is feigning or mimicing the symptoms * * *."

The recommended decision of the hearing examiner became the "final decision" of the Secretary, when, on January 12, 1968, the Appeals Council adopted the findings of fact, inferences and conclusions of law as set forth therein. Both parties have again moved for summary judgment subsequent to the remand of this case.

Congress has granted the federal district courts only a limited role in the reviewing of the Secretary's administrative determinations. 42 U.S.C. § 405(g) provides, inter alia, that " * * * the findings of the Secretary as to any fact, *if supported by substantial evidence, shall be conclusive.*" (Emphasis added). Since it has already been determined by this court that the administrative determination prior to remand was "technically supported by such substantial evidence as to require affirmance, * * *", we consider the issue presented here to be an extremely narrow one—whether at the hearing on remand, plaintiff, with the aid of counsel, was given full opportunity to present evidence in her behalf which vitiated the substantial evidence that she was not "disabled" within the meaning of the Act.

Subsequent to remand and prior to the August 1967 hearing, plaintiff was examined, at government expense, by several physicians, whose reports were made a part of the record upon which the final decision was rendered. We shall summarize the contents of those reports.

Dr. J. D. Wofford, internist, examined plaintiff in January 1967, and investigated her complaints of pain in the spine, neck, head, right arm, both legs, and low back. He found her head, heart and lungs normal and a neurological examination was negative. Skull and cervical x-rays and skin and muscle biopsies revealed no abnormalities. His diagnosis was central nervous system syphilis and cervical and lumbar pain probably caused by chronic myocytis and fasciitis (muscle tissue inflammation), compounded with chronic anxiety. His conclusion was that " * * * if the patient embarked on a physical exercise and physical re-education program * * * she would have no problem performing sedentary and light and moderate work and could probably engage in normal activities." (TR 322–323).

Dr. H. N. Hamilton, a specialist in orthopedic surgery, examined plaintiff on March 23, 1967, and noted her ability to move about actively with no limp. He found that there was no atrophy of her arms or legs; that there was no muscle paralysis; and that x-rays were negative. He reported that "orthopedically, I could detect no evidence of pathology, disease or disability in this patient and I would recommend that she return to her usual occupational duties." (TR 366–367).

3. 42 U.S.C. § 416(i) (3) requires that disability must arise while the plaintiff possesses an "insured status"—twenty quarters of employment coverage during the last forty quarters ending with the quarter of disability. The hearing examiner who presided at plaintiff's first hearing on August 19, 1963, specifically found that plaintiff met the special earnings requirement in the quarter of alleged onset of disability, and would continue to do so through September 30, 1966.

On March 28, 1967, plaintiff was examined by Dr. W. J. Erwin, a psychiatrist. His reaction was that the patient demonstrated "a considerable element of exaggeration of symptomatology" and that her behavior was "highly theatrical and histrionic". He concluded, in sum, that plaintiff's psychiatric symptoms were mild to occasionally moderate in degree and that she did not appear severely incapacitated by reason of her behavioral illness.

Dr. J. P. Holloway, specialist in internal medicine, found, upon his April 4, 1967, examination, that plaintiff's vital organs and reflexes were normal; that there was no muscle atrophy; that there was full range of motion of all points in her arms, legs, and neck, and that an electrocardiogram was within normal limits. He concluded: "I do not believe that there is sufficient organic disease in this patient to account for her symptoms and believe that her chief difficulty lies in her emotional response to this injury with lack of motivation to return to full activity." (TR 358–362).

Dr. W. E. Bowlus, specialist in neurology, examined plaintiff on April 4, 1967, conducted the routine tests, and found no atrophy or pathological reflexes and good muscle tone throughout. At the request of plaintiff's counsel, he conducted an electroencephalogram, but found no indication of focal or lateralizing abnormality (brain wave disorder). He stated that "I find no evidence of any neurologic dysfunction in this patient * * * I do not see any reason why she should be unable to work." (TR 355–357).

Suffice it to conclude that these reports corroborated the evidence upon which the prior determinations of no physical or mental disability were based. We note, also, that the hearing examiner had before him the transcribed testimony of a vocational consultant who testified at a prior hearing that, should the hearing examiner determine that plaintiff's disabilities were not as she described them but were more as shown in the documentary medical evidence, there were several fields of work in which she could be gainfully employed. Among these were positions as cook, waitress, cashier, housekeeper, baby-sitter, eggcandler and vegetable wrapper. All of the jobs enumerated were said to be available in the Greenville, Mississippi, area.

Plaintiff urges several reasons why we should reject this formidable evidence and hold that the proof on remand requires reversal and entry of judgment for her as a matter of law. We now examine these contentions, considering first the proof offered by plaintiff at the August 1967 hearing.

Dr. J. B. Hirsch, testifying for plaintiff, stated that he had hospitalized and treated her in July 1967 for congestive heart failure, which could be traced back to her disabling heart trouble of May 1962. He concluded that, although improved, she was "still unable to do any work". (TR 282–283). Although his direct testimony was certainly favorable to plaintiff's position, there are several apparent inconsistencies appearing in the record which diminish its value. First, the records of the General Hospital of July 1967 show plaintiff's hospitalization to be for "rapid heart beat". The records indicate his diagnosis as "acute paroxysmal tachycardia," (a condition marked by attacks of excessively rapid heart action which come on abruptly and terminate just as abruptly), rather than congestive heart failure (prolonged impairment of the ability of the heart to maintain an adequate flow of blood to the tissues).

In response to the hearing examiner's inquiries as to whether her "heart weakness" could be documented medically, Dr. Hirsch stated:

"I can't tell you that she's paralyzed because she's not—not disabled to walk. She claims that she can't work. That's all we can go by. She's been examined by other people—they didn't find anything radically wrong. This congestive failure was the only thing

I have ever really found that's crippling to her working." (TR 298).

\* \* \* \* \* \*

"I never could really find a lot wrong with Hannah and even when she was pregnant I thought that once she got over having the baby she would be able to work again \* \* \*" (TR 301).

■ Considering the entire medical evidence of record, it must be said that there is "substantial evidence" from which the hearing examiner might conclude that plaintiff has no impairments, either singularly or in combination, of such severity as to continuously preclude her from engaging in any substantial gainful activity, and that there was introduced into the record no new, material and substantial evidence as would justify a reopening of the hearing examiner's decision as to the original application of July 11, 1962.

Plaintiff further urges that the hearing examiner committed procedural errors sufficiently prejudicial to her cause as to require reversal. Her most serious assertion is that the hearing examiner refused to issue subpoenas for any of the five medical specialists who had examined her at her own request[4] and at government expense, and their medical reports were entered into the record without affording her counsel an opportunity to cross-examine such examining doctors at the hearing. After remand by the Appeals Council of the case to the hearing examiner and before the physical examinations were made, plaintiff's counsel, on March 1, 1967, requested "an opportunity to cross-examine under oath any physician whose testimony is used as a basis for a finding of fact in this claim". When examinations were made, reports thereof were promptly furnished to counsel for claimant. On April 28, 1967, they advised the hearing examiner that the reported examinations were inadequate or otherwise objectionable and renewed a request "to cross-examine all doctors \* \* \* before their respective reports are made a part of the record". Upon being advised that their request would not be granted, claimant's counsel by letter appealed to the Appeals Council to be accorded an opportunity to cross-examine at the time of hearing, but the Appeals Council decided not to intervene in the proceeding or to issue contrary directions to the hearing examiner. The supplemental hearing was set for August 28, 1967. On August 23, 1967, claimant's counsel formally requested that subpoenas issue for the five doctors or specialists who had examined her subsequent to the remand. This request was not complied with. At the hearing, claimant objected to the admission of the reports without being afforded the right to cross-examine the physicians, and referred to the remand order entered by the Appeals Council which had directed the hearing examiner to give an adequate opportunity to claimant, among other things, "to examine and cross-examine witnesses". Generally, the Secretary has the power to issue subpoenas requiring the attendance and testimony of witnesses. 42 U.S.C. § 405(d). Social Security Regulations, 20 C.F.R. 404.926, provide in relevant part:

"When *reasonably necessary for the full presentation* of a case, a hearing examiner \* \* \* may, either upon his own motion or upon the request of a party issue subpoenas for the attendance and testimony of witnesses \* \* \* Parties who desire the issuance of subpoenas shall, not less than 5 days prior to the time fixed for the hearing, file with the hearing examiner \* \* \* a written request designating the witnesses \* \* The request for a subpoena shall *state the pertinent facts which the party expects to establish by such witness \* \* \* and whether such facts could*

---

4. Social Security Administration selected the five medical specialists who examined claimant but from the fields of internal medicine, orthopedics, neurology and psychiatry specified by claimant.

*be established by other evidence without the use of subpoena.* Subpoenas, as provided for above, shall be issued in the name of the Secretary of Health, Education and Welfare, and the Social Security Administration shall pay the cost of the issuance and the fees and mileage of any witness so subpoenaed, as provided in section 205(d) of the act." (Emphasis added)

It is evident that a claimant does not have an automatic right to compel the Secretary, or his representatives, to issue witness subpoenas in the specialized, informal hearings of this type. A showing of not only usefulness but necessity must be made by a party to invoke subpoena power, as an exercise of that power appears proper only "when reasonably necessary for the full presentation of a case" and then on a party's request stating "the pertinent facts which the party expects to establish" and a showing that those facts cannot be established "without the use of a subpoena". In a proper case, we do not doubt that the hearing examiner would be in error to refuse to issue subpoenas requested in accordance with the regulations. But here, it is manifest from the very outset—even prior to the date these examinations were made by the physicians and before their findings were known to anyone—that claimant was demanding, and continued to demand, that the doctors be produced for cross-examination. Although furnished with their reports, claimant did not show, as she was required to do, what facts she might expect to prove which were not contained in the reports, or a need of any kind for the personal attendance at the hearing of the expert witnesses. It was not unjust to refuse claimant's demands, nor has any prejudice resulted to her case.

Moreover, the admissibility of the medical reports does not rest upon an opportunity to cross-examine the one who is reporting, but upon the relaxed rules of evidence in administrative proceeding. It has long been settled by the United States Supreme Court "* * that the technical rules for the exclusion of evidence applicable in jury trials do not apply to proceedings before federal administrative agencies in the absence of a statutory requirement that such rules are to be observed (cases cited)." Opp Cotton Mills, Inc. v. Administrator of Wage and Hour Division, 312 U.S. 126, 155, 61 S.Ct. 524, 537, 85 L.Ed. 624, 641. See also Marmon v. Railroad Retirement Board, 218 F.2d 716 (3 Cir. 1954); Staskel v. Gardner, 274 F.Supp. 861 (E.D.Pa.1967). The Regulations of the Social Security Administration provide specifically that "evidence may be received at the hearing [before the hearing examiner] even though inadmissible under rules of evidence applicable to court procedure * * *" Social Security Administration Regulations, 20 C.F.R. 404.928 (1950.) We are, therefore, unimpressed with claimant's assertion that she was denied a fair hearing or that she was, contrary to statute or to pertinent regulation, wrongly deprived of the subpoena power to compel the attendance of medical witnesses for the purpose of cross-examination.

Plaintiff further contends that other procedural errors occurred in the following particulars: 1) Despite the hearing examiner's directive on remand to the State Supervisor, Disability Determination Section, Vocational Rehabilitation Division, that plaintiff be examined by "physicians who have not previously examined her," she was examined by Dr. H. Nelson Hamilton, a partner in the practice of orthopedics with Dr. Clayton J. Overton, who had examined her in connection with a previous hearing; 2) The orthopedic examination of Dr. Hamilton did not include x-ray reports of the back and neck; 3) Dr. Hamilton could not have conducted an impartial examination, since he had his attorney write a letter to plaintiff threatening suit for collection of a past due account; 4) Notwithstanding the authority granted by the hearing examiner for three

separate psychiatric consultations, only one such consultation was had; 5) Although the examining psychiatrist reported that "the medical records in this case are reviewed," the record does not show the communications provided to the psychiatrist or to the other examining doctors; 6) Dr. Bowlus' examination was incomplete in that he obtained only a "waking" record in connection with an electroencephalogram. These objections, if true, would constitute, at the most, merely technical flaws in a record which clearly reflects that the plaintiff was ably represented by counsel, that her case has been fully and fairly presented, and that the ends of justice have been served.

As substantial evidence exists to support the determination of the Secretary, defendant's motion for summary judgment will be sustained, and the decision of the Secretary affirmed.